

# The Attorney General of Texas

August 17, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Ann Richards
Texas State Treasurer
Treasury Department
P. O. Box 12608, Capitol Station
Austin, Texas    78711

Opinion No. JM-66

Re:  Whether the State Treasurer
may use a wire transfer system
to transfer and collect funds
within the treasury

Dear Ms. Richards:

You have requested our opinion as to whether the State Treasurer
may use a wire transfer system to remit and collect funds within the
treasury. The funds are placed in state depository banks and the
State Treasurer wishes to remove funds from one such bank and remit
them to another. We answer your inquiry in the affirmative.

In answering the issue of using the wire transfer system to
transfer funds within the treasury it is important to note that
although there are adequate constitutional and statutory provisions
that guide the State Treasurer in withdrawing funds from the state
treasury, there are no provisions which address the movement of funds
within the treasury. See Tex. Const. art. VIII, §6; V.T.C.S. art.
4371. These funds are invested by the treasurer and are available for
appropriation and expenditure by the legislature. V.T.C.S. art. 2525,
(amended by S.B. No. 100, Acts 1983, 68th Leg. ch. _____ at _____);
V.T.C.S. art. 4371. Since article VIII, section 6 of the Texas
Constitution prohibits these funds from leaving the treasury, it is
important to recognize that a transfer of treasury funds from one
depository bank to another does not cause the funds to be "drawn from
the Treasury." The Court of Civil Appeals has stated the following:

> We are also of the opinion that there is no
> diversion of the state's funds by the depositing
> thereof in banks under this act, in the sense that
> they are withdrawn from the treasury, in violation
> of the Constitution. By the terms of the act it
> is plain that the state's funds, while placed in a
> depository, are still under the custody and
> control of the Legislature, and are directly
> subject to the orders and drafts of the treasurer
> in the payment of the state's obligation. In
> other words, they are not out of the official

custody and control of the treasurer, and cannot
in any proper sense be said to have been drawn
from the treasury.

Lawson v. Baker, 220 S.W. 260, 271 (Tex. Civ. App. – Austin 1920, writ
ref'd). Therefore, since the funds are still within the "control" of
the treasurer, the use of a wire transfer system as a management tool
for the administration of these funds does not violate any
constitutional or statutory provisions. It is acceptable for the
treasurer to use a wire transfer system, instead of the historically
used draft system, in the administration of these funds.

Using a wire transfer system to collect funds within the treasury
is controlled by article 2535, V.T.C.S., which states, in pertinent
part, the following:

> All remittances to the Treasurer made by the State
> Depositories, or any person or persons may be in
> cash by registered and insured letter; by post
> office money order; express money order of any
> company authorized to do business in Texas, or by
> any bank draft on any bank in the following
> cities:   Dallas, Fort Worth, Waco, Houston,
> Austin, Galveston, and San Antonio. The liability
> of any State Depository or person sending the same
> shall not cease until the said money is actually
> received by the Treasurer. (Emphasis added).

Article 2535 provides that the remittances to the treasurer "may"
be made in the ways expressed by the statute. The statute, by using
the word "may" instead of "shall" or "must," does not limit the
treasurer to the stated methods of collection. See, e.g., 53 Tex.
Jur.2d Statutes §16 and cited authorities. In State v. Hatcher, 52
S.W.2d 794, 797 (Tex. Civ. App. – Austin 1932), rev'd on other
grounds, 81 S.W.2d 499 (Tex. 1935), the court found that this language
in the statute gave the remitter the right to remit in these
authorized forms and required the treasurer to accept these forms of
remittance. Additionally, the court found that

> [t]hese restrictions in the forms of remittances
> were no doubt for the convenience of the
> treasurer, and clearly, we think, no duty was
> imposed upon him to accept remittances in any
> other form.

It is important to note that the court did not find that these
authorized forms of remittance were exhaustive or that other forms of
remittance were prohibited. Therefore, it is our opinion that these
statutory restrictions in the forms of remittance are minimum

restrictions imposed on the treasurer which do not prohibit the wire transfer system of collection.

We note that your question is presented in general terms, and we offer no opinion as to the validity of particular transactions.

## S U M M A R Y

The Texas State Treasurer may use a wire transfer system to transfer and collect funds within the treasury.

Very truly yours

JIM  MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Colin Carl
Rick Gilpin
Deborah Herzberg
Jim Moellinger
Nancy Sutton